UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CLAUDE T. MINEO,** | Civ. No. 2:12-cv-01950 (WJM) |
| Plaintiff, | |
| | **OPINION** |
| v. | |
| **GERMAINE MCEACHERN,** *et al.*, | |
| Defendants. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

  Plaintiff Claude T. Mineo brings this action alleging that he was the victim of a complex real estate investment scheme. This matter comes before the Court on Plaintiff's motion seeking default judgment against Defendant Carl Gensib. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, the motion is **DENIED**, the entry of default as to Gensib is **VACATED**, and the Complaint is **DISMISSED WITHOUT PREJUDICE**.

**I. BACKGROUND**

  Plaintiff filed this action against several Defendants, alleging that they defrauded him out of hundreds of thousands of dollars as part of a complex real estate investment scheme. Following the Court's dismissal of two Defendants for lack of personal jurisdiction, and Plaintiff's stipulation of dismissal as to several other Defendants, only Defendant Gensib remains. Both Plaintiff and Gensib are New Jersey residents. Compl. ¶¶ 1, 5.

  Plaintiff was close friends for many years with Defendant Trevor Lavine. Compl. ¶ 104. In early 2007, Lavine introduced Plaintiff to Defendant Germaine McEachern. Compl. ¶¶ 20, 105. McEachern held himself out as a successful real estate investor, and asked Plaintiff if he would be interested in participating in a joint venture with himself (McEachern) and Lavine. Compl. ¶¶ 24, 27. McEachern told Plaintiff that the joint venture would operate by using each participant's credit on a rotating basis for the purchase of multiple investment properties. Compl. ¶ 28. First, one of the participants would use his credit to obtain the mortgage for an investment property. *Id.* The participant whose credit was used would take a larger stake in the profit from the property, while the two other participants took a smaller stake. *Id.* Once the first property was resold, the next participant would use his credit to obtain the mortgage on a

new property, and so on.  *Id.*  After speaking with McEachern, Plaintiff agreed to purchase an investment property as part of the joint venture.  *See* Compl. ¶ 29.

McEachern identified a property in Santa Rosa Beach, Florida for Plaintiff to purchase.  Compl. ¶ 29.  In connection with the purchase of the property, Plaintiff signed a "fraudulent mortgage loan application" that falsely stated that Plaintiff "earned a monthly income of $16,680.00 in addition to his actual gross monthly income of approximately $8,250.00."  Compl. ¶¶ 33, 37.  Plaintiff alleges that McEachern was the one who filled out the application, and that McEachern "encouraged [Plaintiff] to sign the loan application documents without reading the[m]."  *Id.*  The bank approved Plaintiff's application and issued a mortgage note on November 23, 2007 in the amount of $766,400.00.  Compl. ¶ 38.  At the closing, Plaintiff executed the mortgage note.  Compl. ¶ 39.

The Complaint alleges that McEachern recruited Gensib to act as Plaintiff's attorney for the fraudulent transaction.  Compl. ¶ 40.  One of the documents needed for the closing was a U.S. Department of Housing and Urban Development Uniform Settlement Statement (the "HUD-1").  Plaintiff alleges that Gensib "drafted, reviewed and approved . . . the HUD-1," and that "McEachern, as an agent of Gensib, instructed Plaintiff to sign the closing documents."  Compl. ¶¶ 44, 61, 69.  Plaintiff then executed the HUD-1, even though it "falsely and fraudulently stated that Mineo tendered in cash $236,568.53 at the time of closing to Defendants Clark and Sanders."  Compl. ¶¶ 41-42.  In reality, "Mineo never made any down payment or tendered any money at the time of closing," and "only $179,458.51 was disbursed to the sellers."  Compl. ¶¶ 43, 67.  Additionally, the HUD-1 listed an incorrect sale price and failed to disclose several disbursements made from the sellers' proceeds to various Defendants in connection with the sale.  Compl. ¶ 64.  After Mineo signed the closing documents, Gensib sent them to the sellers in Florida for their signatures, and the sale was completed.  Compl. ¶¶ 41, 52-53.  Mineo paid Gensib $5,067.00 for legal services related to the real estate transaction.  Compl. ¶ 55.

Plaintiff filed the instant action on March 30, 2012.  ECF No. 1.  According to the Complaint, the Santa Rosa Beach property "is currently undergoing foreclosure proceedings [which is] harming Plaintiff's credit [and] resulting in untold expenses."  Compl. ¶ 113.  Plaintiff asserts that Defendants were all part of a vast criminal conspiracy to use Plaintiff's good credit to defraud banks and mortgage institutions.  Compl. ¶ 26.  Plaintiff alleges that Gensib knew that the closing documents, including the HUD-1, contained numerous misrepresentations.  Compl. ¶¶ 53, 63, 64.  Plaintiff further alleges that, to entice Plaintiff into finalizing the purchase, Defendants falsely led Plaintiff to believe that Gensib was acting as his attorney and had approved the transaction.  Compl. ¶¶ 59, 62.

Plaintiff served the Complaint on Gensib on April 10, 2014.  ECF No. 4.  The time for Gensib to answer or otherwise respond to the Complaint expired.  See Fed. R. Civ. P. 12(a).  To date, Gensib has failed to answer or otherwise respond to the Complaint.  Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk entered a Default against

Defendants on May 11, 2012. ECF No. 6. Plaintiff filed the instant motion for default judgment, and served Defendants with notice of the motion, on October 24, 2013. ECF No. 48. No opposition has been filed.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 55 governs default. After the Clerk's entry of default pursuant to Rule 55(a), a plaintiff may then seek the Court's entry of default judgment under Rule 55(b)(2). *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008). "Before imposing the extreme sanction of default, district courts must make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Id.* (quoting *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)) ("[W]e have further required the district court to make explicit findings concerning the factors it must consider in rendering judgment by default or dismissal, or in declining to reopen such judgment"). "In weighing these factors, district courts must remain mindful that, like dismissal with prejudice, default is a sanction of last resort." *Doug Brady*, 250 F.R.D. at 177.

A court will deny a default judgment if the complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Animal Sci. Products, Inc. v. China Nat. Metals & Minerals Imp. & Exp. Corp.*, 596 F. Supp. 2d 842, 848-49 (D.N.J. 2008). Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Additionally, under Federal Rule of Civil Procedure 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of America*, 361

F.3d 217, 223-24 (3d Cir. 2004)) (internal quotations omitted).  To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.  *Id.*

### III.  DISCUSSION

Plaintiff filed a fifteen-count Complaint, asserting claims for violations of the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962, the New Jersey RICO Act, N.J.S.A. 2C:41-2, the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, and a variety of state common law claims.  RICO makes it unlawful for "any person employed by or associated with any enterprise … to participate … in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).  To state a violation of Section 1962(c), a plaintiff must show 1) an enterprise affecting interstate commerce, 2) in which the defendant was associated, 3) and in the conduct or affairs of which the defendant participated, 4) through a pattern of racketeering activities.  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010).  To establish a pattern of racketeering, a plaintiff must show that each defendant committed at least two predicate acts of racketeering from the list of acts provided in 18 U.S.C. § 1961.  18 U.S.C. § 1961(5); *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240 (1989).  Plaintiff must also demonstrate that it suffered harm as a proximate result of the alleged RICO activity.

Simply alleging two predicate acts does not suffice to create a pattern under RICO.  To constitute a pattern, the combination of predicate acts must be related to each other and show continuity of conduct.  *H.J.*, 492 U.S. at 238.  Continuity "is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241.  Close-ended continuity exists only if the predicate acts occurred over a substantial period of time.  *Id.*  To prove open-ended continuity, a plaintiff must show that "the predicates themselves amount to, or ... otherwise constitute a threat of, continuing racketeering activity." *Id.* at 240.

Plaintiff alleges that Gensib engaged in mail fraud, wire fraud, and bank fraud.  Even if the Court were to credit the Complaint with sufficiently alleging the elements of each of these racketeering acts and their relatedness, these allegations fail to state a RICO claim.  Specifically, the Complaint fails to allege continuity.  The alleged predicate acts took place over a period of just a few months, which does not constitute a substantial period of time so as to satisfy close-ended continuity.  *See Hughes v. Consol-Pennsylvania Coal Co.*, 945 F.2d 594, 610 (3d Cir. 1991) (finding that twelve months is not a substantial period of time so as to satisfy closed-ended continuity).  And, at least as to Gensib, the allegations also do not demonstrate open-ended continuity.  *See United States v. Bergrin*, 650 F.3d 257, 267 (3d Cir. 2011) ("It is the 'person' charged with the racketeering offense – not the entire enterprise – who must engage in the 'pattern of racketeering activity.'") (citing *H.J.*, 492 U.S. at 244).  The conclusory allegations "based on information and belief" that Gensib has "perpetrated numerous similar transactions" are not enough to show a threat of repetition.  *See* Compl. ¶¶ 48, 70; *Thai Airways Int'l*

*Ltd. v. United Aviation Leasing B.V.*, 891 F. Supp. 113, 119 (S.D.N.Y. 1994), *aff'd*, 59 F.3d 20 (2d Cir. 1995) ("A pattern of racketeering can be comprised of only those fraud-based predicate acts which survive the Rule 9(b) analysis."). Plaintiff has not alleged any specific facts indicating that Gensib interacted with Plaintiff either before or after the closing for the Florida property, or participated in any other transactions with Defendants.

Isolated incidents of real estate fraud will not satisfy the continuity requirement, especially where, as here, there is nothing in the allegations to suggest "further misrepresentations by the defendants in regard to other potential transactions." *Banks v. Wolk*, 918 F.2d 418, 422 (3d Cir. 1990); *see also Stoss v. Singer Fin. Corp.*, No. 08-5968, 2010 WL 678115, at *8 (E.D. Pa. Feb. 24, 2010) (dismissing RICO claims where scheme is based on one allegedly fraudulent real estate transaction); *Meade v. Guaranty Bank*, No. 1:12-cv-1559, 2013 WL 5438750, at *2 (M.D. Pa. Sept. 27, 2013) (granting motion to dismiss where plaintiff's allegations involved single mortgage foreclosure scheme). Plaintiff has thus failed to allege that Gensib participated in a pattern of racketeering activity, and the Court will dismiss the federal RICO claim under Rule 12(b)(6).

Further, as the parties in this matter are not completely diverse, the Court's subject matter jurisdiction is premised on the existence of a federal claim. Because the Court is dismissing the only federal claim in this action, it will decline to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995). The Court will thus vacate the Clerk's entry of default against Gensib and dismiss the entire Complaint.

## IV.   CONCLUSION

For the reasons stated above, Plaintiff's motion for default judgment is **DENIED**, the Clerk's entry of default against Gensib is **VACATED**, and the Complaint is **DISMISSED WITHOUT PREJUDICE**. An appropriate order follows.

                /s/ William J. Martini
            **WILLIAM J. MARTINI, U.S.D.J.**

**Date: May 27, 2014**